UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

IN RE:
DUSAN PITTNER,    Chapter 11
        DEBTOR.    Case No. 10-19726-WCH

**MEMORANDUM OF DECISION**

**I. INTRODUCTION**

The matter before the Court is the "Objection to Confirmation of Debtor's First Amended Plan of Reorganization Filed on April 27, 2011" (the "Objection") filed by Deutsche Bank National Trust Company[1] ("Deutsche Bank") and the "Response to Objection to Confirmation" (the "Response") filed by Dusan Pittner (the "Debtor"). Deutsche Bank objects to the Debtor's plan on the grounds that it is unfeasible, does not satisfy the present value requirements of 11 U.S.C. § 1129(b), and impermissibly attempts to modify Deutsche Bank's lien. For the reasons set forth below, I will overrule the Objection in part and schedule the matter for an evidentiary hearing.

**II. BACKGROUND**

On May 14, 2009, the Debtor and Ludmila Pittnerova filed a joint voluntary Chapter 7 petition.[2] They appeared at the meeting of creditors held pursuant to 11 U.S.C. § 341 on July 2, 2009, and were examined by the Chapter 7 trustee. On July 8, 2009, the Chapter 7 trustee filed a report of no distribution, indicating that no property was available for distribution to creditors.

---

[1] As Trustee in trust for the benefit of the Certificateholders for Ameriquest Mortgage Securities Trust 2005-R5, Asset-Backed Pass-Through Certificates, Series 2005-R5.

[2] *See* Case No. 09-14368-WCH.

1

On September 1, 2009, the Court entered an order granting the Debtor and Pittnerova a discharge under 11 U.S.C. § 727.

On September 6, 2010, a little over a year after the Debtor received a Chapter 7 discharge, he filed the present Chapter 11 case. According to the Debtor's Second Amended Disclosure Statement (the "Disclosure Statement"), the purpose of this case is to "provide for payment in full of claims that are actually secured by real estate, as well as any non-dischargeable tax claims."[3] To this end, the Debtor proposes "to grant to all the creditors with all creditors with allowed secured claims a new note and mortgage with the principal amount equal to the value of the property as assessed by the municipality . . . ."[4] Furthermore, "the Notes will provide for a fixed rate of interest of 5%, which is equal to the prime interest rate as of the petition date of 3.25% . . . plus 1.75%."[5] These notes would have a term of 23 years.[6]

One of the properties owned by the Debtor is located at 119 Randall Street, in North Easton, Massachusetts (the "Property") and is purportedly his principal residence. According to the Disclosure Statement, the Debtor and his family live in the basement apartment while the rest of the Property has been rented to a tenant whose rent is scheduled to be $2,100 per month. Deutsche Bank holds a mortgage (the "Mortgage") on the Property and as of the petition date, the estimated loan payoff was $571,944.28.[7] On Schedule A – Real Property, the Debtor listed the value of the Property as $334,000.[8] Therefore, pursuant to the Debtor's First Amended Plan

---

[3] Docket No. 85 at 2.

[4] *Id.*; Debtor's First Amended Plan of Reorganization, Docket No. 74 at 1.

[5] *Id.*

[6] Docket No. 85 at 3; Docket No. 74 at 2.

[7] Claim No. 3-2.

[8] Docket No. 1.

2

of Reorganization (the "Plan"), the principal amount of the new note with respect to the Property would be $334,00 at 5% interest for a term of 23 years, requiring a monthly payment of $2,038.76.

On July 21, 2011, Deutsche Bank filed the Objection, asserting that the Plan is neither feasible nor complies with the provisions of the Bankruptcy Code. The Debtor filed the Response on July 25, 2011. I held a hearing on the Objection on July 27, 2011, and at its conclusion, took the matter under advisement.

### III. POSITIONS OF THE PARTIES

Deutsche Bank

Deutsche Bank objects to the Plan for several reasons. First, it contends that the Mortgage is not modifiable because the Debtor previously discharged his liability for the underlying note. Deutsche Bank explains:

> A lien cannot be modified under 11 U.S.C. § 506(d) if the claim that it secures is an allowed claim. That section prescribes a number of special rules governing the avoidance of liens that secure disallowed claims. . . . In this case, the nature of the allowed claim is that the mortgage lien only [sic]; secured solely by the value of the Property. The claim is not modifiable by the Debtor because the lien survived the discharge, and the Debtor discharged his obligation with regard to the mortgage lien. As a result, the mortgage lien survived in tact [sic], and the amount of the allowed secured claim is $571,944.28 (regardless of what the actual value of the Property may be). Accordingly, the amount of the mortgage lien is not a claim that the Debtor can "cramdown" through these proceedings. The Debtor must provide for the allowed secured claim of the mortgage lien as required by 11 U.S.C. §§ 1125 and 1129, which it does not do.[9]

Alternatively, Deutsche Bank asserts that its claim is protected from modification under 11 U.S.C. § 1123(b)(5) because the Property is the Debtor's principal residence.

Second, Deutsche Bank argues that the Plan cannot be confirmed because it does not satisfy 11 U.S.C. § 1129(b) because the proposed rate of interest fails to adequately compensate

---

[9] Docket No. 90 at 4.

3

Deutsche Bank for the time value of money and the risk of the Debtor's default. In light of the Debtor's significant contractual default, his failure to demonstrate resources to maintain expenses attendant to the Property, his minimal alleged operating income which barely covers the proposed principal and interest payment, and the fact that Deutsche Bank's claim is based upon the Property alone, Deutsche Bank suggests that the risk factors should dictate an interest rate of at least 8% or 9%. Deutsche Bank contends, however, that if a sufficient interest rate were used, the Plan would not be feasible.

Third, Deutsche Bank asserts that the Plan as proposed is unfeasible because there is no proof that the Debtor will receive $2,100 per month from a tenant. Moreover, even if such rent were proven, it fails to account for the payment of real estate taxes, insurance, utilities, maintenance, and other property expenses.

### The Debtor

In opposition, the Debtor contends that he is not seeking to avoid Deutsche Bank's lien *in toto*, but merely to the extent that it exceeds the value of the property as provided by 11 U.S.C. § 506(a). He asserts that whether a claim has survived a prior discharge has no impact on whether it is modifiable, and that Deutsche Bank has cited no authority in support of that position. While the Debtor concedes that the Property is his principal residence, he notes that it is also an income producing property, which is supported by his operating reports, and argues that a claim is nonetheless modifiable when it is secured by more than the Debtor's principal residence.

With respect to the interest rate, the Debtor contends that the proposed rate of 5% is 1.75% above the prime rate of 3.25% and comports with the requirements of *Till v. SCS Credit Corp.*[10] He argues that an interest rate that is nearly three times the prime rate is wholly

---

[10] *Till v. SCS Credit Corp.*, 541 U.S. 465, 477 (2004).

4

unwarranted in the absence of any evidence that Deutsche Bank could obtain that rate from another source in the present economy. Indeed, the Debtor contends that a cramdown rate of interest that is greater than the contract rate of the mortgage, which here is 5.990%, is unsupported by *Till*. Finally, the Debtor asserts that his monthly operating reports demonstrate a positive cash flow sufficient to pay the proposed monthly principal and interest payment in addition to other property related expenses, refuting Deutsche Bank's risk analysis and proving the Plan's feasibility.

## IV. DISCUSSION

From the outset, I note that whether the Plan is "fair and equitable" under 11 U.S.C. § 1129(b) or feasible in accordance with 11 U.S.C. § 1129(a)(11) are, in this instance, questions of fact that require evidence. Additionally, to the extent that the modifiability of Deutsche Bank's claim is dependent on whether the Property is, in addition to serving as the Debtor's principal residence, income producing, a further developed record may be required.[11] Accordingly, I will enter a pre-trial order with respect to these issues and schedule the matter for an evidentiary hearing.

Deutsche Bank's remaining argument, namely, that its claim is not modifiable because the lien survived discharge in the Debtor's prior case, is wholly unsupported. The parties agree that the Chapter 7 "discharge extinguishes *only* 'the personal liability of the debtor' . . . [and that] the Code provides that a creditor's right to foreclose on a mortgage survives or passes through the bankruptcy."[12] Thus, in the Debtor's second bankruptcy filing, Deutsche Bank has an

---

[11] *See Lomas Mortg., Inc. v. Louis*, 82 F.3d 1, 7 (1st Cir. 1996) ("The 1994 Act evidences a deliberate choice on the part of Congress under Chapter 11 to exclude security interests in multi-unit properties like that here from the reach of the antimodification provision based on its understanding that Chapter 13's antimodification provision did not reach such security interests.").

[12] *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (*quoting* 11 U.S.C. § 524(a)(1)) (emphasis in original).

5

allowed secured claim that is *in rem* only.[13]  Through a Chapter 11 plan, the Debtor may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . . ."[14]  Section 506(a) provides in relevant part that:

> [a]n allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . .[15]

Because the Debtor has no *in personam* liability on account of the claim, the value of Deutsche Bank's claim cannot exceed the value of the Property.  This, of course, is logical because the secured creditor is afforded the same treatment it would receive if it attempted to foreclose on the Property where the deficiency had already been discharged.  Therefore, I will overrule the Objection in part.

---

[13] To the extent that it has an allowed secured claim, Deutsche Bank's citation of 11 U.S.C. § 506(d), which applies to disallowed claims secured by a lien, is inapposite.

[14] 11 U.S.C. § 1123(b)(5).

[15] 11 U.S.C. § 506(a)(1).

## V. <u>CONCLUSION</u>

In light of the foregoing, I will enter an order overruling the Objection in part and scheduling the matter for an evidentiary hearing.

_____
William C. Hillman
United States Bankruptcy Judge

Dated: September 26, 2011

Counsel Appearing:

    David G. Baker, The Law Office of David G. Baker, Boston, MA,
        for the Debtor
    Jeana Kim Reinbold, Ablitt Scofield, P.C., Woburn, MA,
        for the Deutsche Bank